UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| SCOTT COUNTY REGIONAL SEWER DISTRICT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-00148-JMS-DML |
| | ) | |
| CITY OF SCOTTSBURG, INDIANA and | ) | |
| CITY OF AUSTIN, INDIANA, | ) | |
| | ) | |
| *Defendants.* | ) | |

# ORDER

Plaintiff Scott County Regional Sewer District ("the District") and Defendants City of Scottsburg, Indiana ("Scottsburg") and City of Austin, Indiana ("Austin") entered into wastewater service agreements ("the Scottsburg Agreement," "the Austin Agreement," and, collectively, "the Agreements") in 1988 and 1996, respectively. Sometime thereafter, Defendants adopted ordinances related to wastewater services ("the Scottsburg Ordinance," "the Austin Ordinance," and, collectively, "the Ordinances"), which are the subject of this lawsuit. The Ordinances prohibit sewer utilities, other than the Scottsburg Sewer Utility and the Austin Sewer Utility, from commencing or continuing the collection of waste substances without first obtaining permission from the respective city. The District initiated this lawsuit against Defendants, alleging that Defendants' conduct violates 7 U.S.C. § 1926(b), violates the District's civil rights, and constitutes a breach of the Agreements. [Filing No. 1 at 11-15.] Scottsburg and Austin have filed a Motion to Dismiss, seeking dismissal of all of the District's claims on the grounds of ripeness and abstention. [Filing No. 9.]

1

# I.
## STANDARD OF REVIEW

Defendants do not specify under which Federal Rule of Civil Procedure they bring their Motion to Dismiss, but their arguments – that the District's claims are not ripe and that the Court should abstain from deciding the District's claims – are jurisdictional arguments properly raised pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Illinois Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 922 (7th Cir. 2022) (dismissal of complaint for lack of jurisdiction analyzed under Fed. R. Civ. P. 12(b)(1)). Rule 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for its claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

# II.
## BACKGROUND

The following are the factual allegations contained in the Complaint, which the Court must accept as true at this time.

The District, a regional sewer district, was created in 1973 under Indiana law. [Filing No. 1 at 1.] When it was created, the District's service area included all of Scott County, Indiana, except the incorporated areas of Scottsburg and Austin. [Filing No. 1 at 1.]

### A. The Scottsburg Agreement

On November 11, 1988, the District and Scottsburg entered into the Scottsburg Agreement, in which Scottsburg agreed to treat, on average, .0378 million gallons of sewage daily for the

District.  [Filing No. 1 at 2; Filing No. 1-1 at 3.]  The Scottsburg Agreement established the parties' service areas and prohibited either party from infringing on the other party's planning and service area.  [Filing No. 1 at 3.]  Scottsburg's service area was limited to its municipal boundaries.  [Filing No. 1 at 3.]

Under 7 U.S.C. § 1926, the District obtained a loan from the United States Department of Agriculture to construct sewage works.  [Filing No. 1 at 2.]  Thereafter, the District and Scottsburg amended the Scottsburg Agreement to account for the federal debt the District had obtained for the construction.  [Filing No. 1 at 2.]  At that time, Scottsburg's municipal boundaries were east of Interstate 65.  [Filing No. 1 at 3.]  The amendment also extended the term of the Scottsburg Agreement to 40 years, to coincide with the 40-year term of the federal debt.  [Filing No. 1 at 4.]  Accordingly, the Scottsburg Agreement is in effect until November 11, 2028.  [Filing No. 1 at 4; Filing No. 1-1 at 3; Filing No. 1-2.]

### B.     The Austin Agreement

On June 5, 1996, the District and Austin entered into the Austin Agreement, in which Austin agreed to treat, on average, .075 million gallons of sewage each day from the District.  [Filing No. 1 at 4.]  The Austin Agreement included a provision that prohibited Austin and the District from infringing on the other's planning and service area unless a planning and service area was changed by agreement of the parties.  [Filing No. 1 at 4.]  Austin's service area was limited to its corporate boundaries.  [Filing No. 1 at 4.]

### C.     The Disputed Property

Sometime after signing the Scottsburg Agreement, Scottsburg began annexing territory west of Interstate 65 and adjacent to the District's sewer main along State Road 56.  [Filing No. 1

at 4-5.] The annexed territory is within the District's service area and includes the property which is the subject of this lawsuit ("the Disputed Property"). [Filing No. 1 at 4-5.]

Subsequently, an owner or developer of the Disputed Property met with Scottsburg and communicated its intention to develop the Disputed Property into a residential subdivision. [Filing No. 1 at 6.] Scottsburg then approached the developer and offered to provide sewer service to the Disputed Property. [Filing No. 1 at 7.] In April 2021, Scottsburg informed the District that the developer refused to proceed with the development plans unless the proposed subdivision was on the Scottsburg sewer system. [Filing No. 1 at 7; Filing No. 1-4 at 3.] Scottsburg proposed that it begin serving all areas located within the city boundaries – which would include the Disputed Property – and that it take ownership of the District's sewer line along State Road 56. [Filing No. 1 at 7.] The District rejected Scottsburg's proposal. [Filing No. 1 at 7.]

### D. The Scottsburg and Austin Ordinances

On July 26, 2021, Scottsburg adopted the Scottsburg Ordinance. [Filing No. 1 at 8; Filing No. 1-5 at 7-10.] The Scottsburg Ordinance applies to "all territory within the corporate boundaries of [Scottsburg]" (which includes the Disputed Property and other property currently served by the District but that has been annexed by Scottsburg), and the area four miles outside of its corporate boundaries. [Filing No. 1 at 8-9.] The Scottsburg Ordinance provides that "no sewer utility other than the Scottsburg Sewer Utility shall commence or continue the collection, processing, or disposition of waste substances and domestic or sanitary sewage within the Scottsburg Sanitary Sewage Service Area without first obtaining a permit from [Scottsburg] authorizing the sewer utilities to provide such services within the Area." [Filing No. 1 at 8; Filing No. 1-5 at 7.]

On August 10, 2021, Austin adopted the Austin Ordinance, which is materially identical to the Scottsburg Ordinance. [Filing No. 1 at 10; Filing No. 1-5 at 12-16.]

4

### E.     The Petition for Approval of the Ordinances

On August 26, 2021, Scottsburg and Austin jointly petitioned the Indiana Utility Regulatory Commission ("IURC") for approval of the Scottsburg and Austin Ordinances. [Filing No. 1 at 11.] The IURC proceeding remains pending. *See* Cause No. 45603 at https://www.iurc.portal.in.gov (last visited August 2, 2022).[1]

### F.     The Lawsuit

On September 8, 2021, the District filed a Complaint against Scottsburg and Austin, setting forth claims: (1) requesting a declaration that Scottsburg serving the Disputed Property would violate 7 U.S.C. § 1926(b); (2) requesting a declaration that the Scottsburg and Austin Ordinances violate 7 U.S.C § 1926(b); (3) requesting an injunction prohibiting Scottsburg and Austin from enforcing the Ordinances; (4) for civil rights violations under 42 U.S.C. § 1983; and (5) for breach of contract. [Filing No. 1 at 11-13.] Scottsburg and Austin have filed a Motion to Dismiss all of the District's claims, arguing that they are not ripe or, in the alternative, that the Court should abstain from adjudicating them. [Filing No. 9; Filing No. 10.]

## III.
### DISCUSSION

### A.     Regulatory Framework

Defendants petitioned the IURC to review the Scottsburg and Austin Ordinances according to Indiana Code § 8-1.5-6-9(a), which applies to a municipality that adopts a regulatory ordinance after December 31, 2012 and owns a utility that is not permitted or eligible to file a wholesale sewer petition. Ind. Code § 8-1.5-6-9(a). A regulatory ordinance: "(1) asserts the exclusive authority of a municipal utility to provide service within a regulated territory; or (2) prohibits

---

[1] The Court "may take judicial notice of matters of public record." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (quotation and citation omitted).

another utility from providing utility service in the regulated territory." Ind. Code § 8-1.5-6-3. Municipalities must petition, and be granted approval from, the IURC before a regulatory ordinance may go into effect. Ind. Code § 8-1.5-6-9(b). The Scottsburg and Austin Ordinances apply to both regulated and unregulated territory. [Filing No. 1 at 8-9.] Pursuant to Indiana Code § 8-1.5-6-9(b), Scottsburg and Austin are required to obtain approval from the IURC with respect to the regulated territory before the regulatory aspects of the Scottsburg and Austin Ordinances take effect.

### B.     Whether the District's Claims are Ripe

#### 1.  *Count I - Declaratory Judgment Regarding the Disputed Property*

Defendants assert that the District's claims are not ripe because the Scottsburg and Austin Ordinances will not be in effect until approved by the IURC. [Filing No. 10 at 5.] They argue that the Ordinances "are not in effect," "may never be in effect," and "will have no effect on the District unless they are approved by the IURC." [Filing No. 10 at 7.] Defendants contend that even though the Disputed Property is not located in regulated territory, the IURC must approve all aspects of the Scottsburg and Austin Ordinances and the Ordinances have no effect with respect to the Disputed Property until and unless the IURC approves them. [Filing No. 10 at 7.]

The District responds that Count I does not relate to the Ordinances, but rather to Scottsburg annexing the Disputed Property and offering to serve it. [Filing No. 17 at 14.] It asserts that the claim was sufficiently ripe when "Scottsburg's counsel wrote the District in April 2021 that the 'developer w[ould] not proceed if the proposed subdivision [was] not on [Scottsburg's] system.'" [Filing No. 17 at 14-15 (emphasis omitted).]

In reply, Defendants assert that "Count I relies on the [Scottsburg] Ordinance's attempt to serve territory the District claims as its own." [Filing No. 20 at 8.] According to Defendants,

"[t]he Disputed Territory is among the service areas to be determined by the IURC's review of the Ordinances." [Filing No. 20 at 8.] Defendants state that because the IURC has yet to approve the Ordinances, Count I is not ripe. [Filing No. 20 at 8.] They maintain that in April 2021, they merely informed the District that the owner or developer preferred to receive service from Scottsburg and that this did not curtail or limit service in the area within the meaning of § 1926(b). [Filing No. 20 at 9.] Therefore, Defendants insist that a violation of § 1926(b) did not occur and that the developer's ability to receive service from Scottsburg is an issue that the IURC will resolve. [Filing No. 20 at 9.]

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and to ensure that judicial interference occurs only once "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quotation and citation omitted). The ripeness doctrine pulls its authority from the limitations imposed on judicial power in Article III of the Constitution and from prudential reasons compelling abstention—such as an administrative agency's pending review of a dispute. *Id.* at 808.

The ripeness doctrine preserves judicial resources by preventing the adjudication of claims based on hypothetical facts. *Church of Our Lord and Savior Jesus Christ v. City of Markham, Ill.*, 913 F.3d 670, 676 (7th Cir. 2019). Consequently, for a claim to be ripe, a plaintiff must demonstrate the existence of an impending injury. *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923). Determining ripeness requires that the Court "evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park*

*Hosp. Ass'n*, 538 U.S. at 804. In order to be ripe, a claim must be based on a certain, not hypothetical, event. *Church of Our Lady and Savior Jesus Christ*, 913 F.3d at 676-77.

Count I is based on 7 U.S.C. § 1926, which applies to public agencies who have received a loan from the United States for the "installation or improvement of drainage or waste disposal facilities" (among other things), 7 U.S.C. § 1926(a), and provides that:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b).

To establish a violation of § 1926(b), a plaintiff must show: "(1) it is an association within the meaning of the statute; (2) it has a qualifying outstanding loan obligation; (3) it has provided or made service available to the disputed area; and (4) a competing entity curtailed or limited service in the area to which the plaintiff was providing service or making service available." *Brown Cnty. Water Utility, Inc. v. Town of Nashville, Ind.*, 2019 WL 2123461, at *7 (S.D. Ind. 2019). Congress passed § 1926 to "encourage rural water development by expanding the number of potential users and to safeguard the financial viability of rural associations and [federal] loans." *CSL Utilities, Inc. v. Jennings Water, Inc.,* 16 F.3d 130, 134 (7th Cir. 1993).

Count I is focused on whether Scottsburg violated § 1926(b) by annexing the Disputed Property and by offering to serve the Disputed Property. [Filing No. 1 at 11.] These are both events that have already taken place, and the District's claim could rise or fall independent of whether the IURC ultimately approves the Ordinances. Because Count I is not based on

8

hypothetical events, but rather on events that have already taken place, it is ripe and Defendants' Motion to Dismiss Count I based on ripeness grounds is **DENIED**.

> 2. *Count II - Declaratory Judgment that the Scottsburg and Austin Ordinances Violate § 1926(b)*

Defendants argue that Count II is not ripe because the IURC has not yet approved the Ordinances. [Filing No. 10 at 5.] Defendants emphasize that the District has not suffered a particularized and imminent injury because the IURC's approval of the Ordinances is hypothetical and not guaranteed. [Filing No. 10 at 5.] According to Defendants, unless or until the IURC approves the Ordinances, the Ordinances have no effect and the District has not suffered harm. [Filing No. 10 at 7.] Defendants also argue that the IURC must approve all aspects of the Ordinances, even the aspects that apply to property within Scottsburg, before the Ordinances take effect. [Filing No. 10 at 7.]

In response, the District argues that the IURC only oversees permitting requirements for areas outside of municipal boundaries, and the parts of the Ordinances applying to areas within municipal boundaries do not require IURC approval and are already in effect. [Filing No. 17 at 25-26.]

In reply, Defendants reiterate their argument that the District's claims are not ripe because they rely on the enforceability of the Ordinances, which have not yet been approved by the IURC. [Filing No. 20 at 10.]

Count II is ripe if it "is not based on an uncertain or contingent event." *Church of Our Lord and Savior Jesus Christ*, 913 F.3d at 676. Indiana Code § 8-1.5-6-9 requires that the IURC "shall issue an order resolving all issues presented in [a petition for approval of a regulatory ordinance]." Even though the Scottsburg and Austin Ordinances relate in part to property that Scottsburg and Austin may not need permission from the IURC to service – *i.e.*, property outside of municipal

boundaries – the IURC will be issuing an order resolving all issues covered by the petition before it. The Court finds that whether the Scottsburg and Austin Ordinances violate § 1926(b) is a question that will not be ripe unless and until the Ordinances take effect. Accordingly, Count II is based on a hypothetical event – the IURC approving the Ordinances – and it is not ripe for the Court's adjudication. Defendants' Motion to Dismiss is **GRANTED** and Count II is **DISMISSED**.

        3.      *Count III - Injunctive Relief Enjoining Scottsburg and Austin from Enforcing the Scottsburg and Austin Ordinances*

Defendants do not directly address the grounds which render Count III unripe for adjudication. Defendants generally argue that the Ordinances will not be in effect unless and until the Ordinances receive IURC approval. [Filing No. 10 at 5.] Defendants argue that "[t]he type of claim does not change the ripeness analysis. Whether the District wants damages, an injunction, or a declaratory judgment, the Ordinances remain unenforceable until the IURC approves them." [Filing No. 10 at 8.]

The District does not specifically address Defendants' ripeness argument as it relates to Count III. [*See* Filing No. 17.]

In Count III, the District seeks "an injunction prohibiting Scottsburg or Austin from enforcing the Scottsburg or Austin Ordinances against the District." [Filing No. 1 at 13.] Count III is contingent on the enforceability of the Ordinances – which has not yet been determined because the IURC has not yet issued a decision. The IURC's approval of the Ordinances is a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Accordingly, the District's claim for injunctive relief is not ripe, Defendants' Motion to Dismiss Count III is **GRANTED**, and Count III is **DISMISSED**.

        *4.*      *Count IV - Civil Rights Violation*

The parties do not explicitly address the ripeness issue in connection with Count IV, other than Defendants arguing generally that none of the District's claims are ripe. [Filing No. 10 at 5-9.]

It is not clear exactly which of Defendants' alleged acts the District claims violated its civil rights – annexing the Disputed Property and offering to provide service to it, or enacting the Ordinances, or all of these acts. Consistent with its rulings above, the Court finds that to the extent the District's civil rights claim is based on Scottsburg's annexation of the Disputed Property and its offer to serve that property, the civil rights claim is ripe, Defendants' Motion to Dismiss Count IV is **DENIED IN PART** accordingly, and that claim shall proceed. To the extent, however, that the civil rights claim is based on enacting the Ordinances, the claim is not ripe because the IURC has not yet approved the Ordinances, Defendants' Motion to Dismiss is **GRANTED IN PART**, and Count IV (to the extent it is based on enacting the Ordinances) is **DISMISSED** accordingly.

        *5.*      *Count V - Breach of Contract*

Defendants argue that Count V is not ripe because it is contingent on the IURC's approval of the Ordinances. [Filing No. 10 at 5.] According to Defendants, until the Ordinances are approved, Count V is based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." [Filing No. 10 at 8-9.]

In response, the District alleges that "Scottsburg and Austin breached the [Agreements] when they adopted the Ordinances and sought IURC approval of them." [Filing No. 17 at 22.] The District contends that Count V is ripe because the alleged breach has already occurred and "damaged the District by forcing it to incur attorneys' fees fighting off Scottsburg and Austin's unliteral attempts to encroach on the District's service area without the District's consent." [Filing

11

No. 17 at 22-23.] According to the District, regardless of when or whether the Ordinances are approved by the IURC, a breach has already occurred and the District has suffered damages based on that breach. [Filing No. 17 at 23.]

In reply, Defendants assert that "Count V is not made ripe just because the IURC has no power to award breach of contract damages."[2] [Filing No. 20 at 10.] According to Defendants, regardless of the remedies the District seeks, the "Ordinances remain contingent unless the IURC approves them." [Filing No. 20 at 10-11.]

Both the Scottsburg and Austin Agreements incorporate the following language: "The parties agree that the planning and service areas for each party are reflected upon the map attached hereto . . . and may be changed by the agreement of the parties. Unless a planning and service area is changed by agreement of the parties, neither party shall infringe on the other party's planning and service area." [Filing No. 1 at 3-4.] The District alleges in Count V that Scottsburg and Austin breached the Agreements by "unilaterally seeking to extend their service areas into the District's service area by adopting the Scottsburg and Austin Ordinances and by petitioning the IURC to approve them, rather [than] through an agreement by the parties as the Scottsburg and Austin Agreements require." [Filing No. 1 at 14.]

The acts the District relies upon to support its breach of contract claim – adopting the Ordinances and seeking IURC approval – are neither hypothetical nor dependent on future events. They are acts that have already occurred. Accordingly, the District's breach of contract claim is ripe and Defendants' Motion to Dismiss as it relates to Count V is **DENIED**.

---

[2] Defendants appear to have misunderstood the District's argument. The District did not assert that the IURC's lack of jurisdiction to award attorneys' fees renders its breach of contract claim ripe. Rather, the District argues that the IURC's lack of jurisdiction to decide breach of contract claims or award attorneys' fees renders abstention inapplicable. [Filing No. 17 at 23.]

### C. Whether the Court Should Abstain from Hearing the District's Claims

Defendants assert that the Court should abstain from hearing the District's claims "due to the ongoing administrative case" before the IURC. [Filing No. 10 at 9.] Defendants contend that "[a]t least two abstention doctrines apply to the District's case." [Filing No. 10 at 9.] First, Defendants assert that the Court should abstain from hearing the case pursuant to *Burford* abstention, arguing that the IURC has jurisdiction to determine whether the Ordinances are enforceable, that it "stands in a special relationship of technical oversight or concentrated review to the evaluation of those claims," and that Indiana "has a strong public policy in ensuring that utility service disputes are resolved in a prompt and consistent manner." [Filing No. 10 at 10 (quotation and citation omitted).] Defendants also argue that the *Wilton/Brillhart* doctrine warrants abstaining from deciding the District's declaratory judgment claims. [Filing No. 10 at 12-14.] They contend that the Court has "unique and substantial discretion in deciding whether to declare the rights of litigants," and that abstention is warranted "when there is a state proceeding pending in state court between the same parties that will answer the same precise legal question." [Filing No. 20 at 15 (quotation and citation omitted).]

In response, the District argues that the Court should not abstain from deciding this case, arguing in relation to Count I that Indiana law allocates jurisdiction to the IURC to "resolve[] territorial disputes outside municipal boundaries," but that "federally indebted utilities are expected to enforce their own rights under § 1926(b), and therefore, a federal court abstaining from hearing such a claim should be exceedingly rare." [Filing No. 17 at 16.] The District reiterates its argument that Count I relates only to the Disputed Property, which is located within the corporate boundaries of Scottsburg and which is not subject to IURC regulation. [Filing No. 17 at 18.] The District also argues that the Court should not abstain from hearing Count V because "[t]he IURC

13

lacks jurisdiction to decide breach of contract cases or award attorneys' fees, and therefore, abstention does not apply." [Filing No. 17 at 23.]

In reply, Defendants argue that *Burford* abstention applies because "this case concerns the complex area of utility regulation as well as the state policy issues that arise when utilities have conflicting service territories." [Filing No. 20 at 14.] To not acknowledge the District's claims as difficult matters of state law and policy, Defendants argue, "ignores what is before the IURC." [Filing No. 20 at 15.] Additionally, Defendants argue that the *Wilton/Brillhart* doctrine requires abstention because "[t]he IURC proceeding offers a state proceeding with the same issues and same parties." [Filing No. 20 at 15.] Defendants contend that federal adjudication of the District's claims would upset state policy and would permit the District to bypass "the mandatory IURC review and go directly to the Court." [Filing No. 20 at 15.]

Because the Court has already dismissed Counts II and III and Count IV to the extent it is based on the enactment of the Ordinances, it only discusses whether abstention is appropriate in connection with Counts I and V and Count IV to the extent it is based on the annexation of the Disputed Property and the offer to provide service to that property.

    1. *Burford Abstention*

A federal court may abstain under *Burford* when: (1) it is "faced with difficult questions of state law that implicate significant state policies"; or (2) "concurrent federal jurisdiction would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011) (quotations and citations omitted).

Counts I and IV do not present the Court with "difficult questions of state law that implicate significant state policies." *Adkins*, 644 F.3d at 504. Rather, they relate to whether Defendants'

14

actions violate federal law. *See El Oso Water Supply Corp. v. City of Karnes City, Tex.*, 2011 WL 9155609, at *4, n.6 (W.D. Tex. 2011) (declining to abstain from hearing § 1926 claim under *Burford* because "while an important state interest is involved, an equally important federal interest is at stake as well," and the case did not "require inquiry into unsettled issues of state law so much as interpretation of the federal statute and its underlying purpose"). Further, Count V relates to whether Defendants breached the Scottsburg and Austin Agreements, an issue that has no implication on state policies.

By hearing the District's claims, the Court would not disrupt the IURC proceedings because the IURC and the Court are attempting to answer different questions. The IURC is reviewing the Ordinances to determine their enforceability. Conversely, the Court will be analyzing whether Defendants' conduct violated § 1926(b), whether the District is entitled to attorneys' fees under § 1983, and whether Defendants breached the Scottsburg and Austin Agreements. The Court declines to abstain from hearing this case based on *Burford* abstention.

    2.  *Wilton/Brillhart Abstention*

The *Wilton/Brillhart* abstention doctrine permits district courts to abstain from hearing claims "seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009). "Where state and federal proceedings are parallel and the federal suit contains claims for both declaratory and non-declaratory relief, the district court should determine whether the claims seeking non-declaratory relief are independent of the declaratory claim." *Id.* at 716.

Here, the Court need not analyze the interplay between the declaratory and non-declaratory claims because this lawsuit and the IURC proceeding are not "parallel." To the contrary, as discussed above, the IURC is considering whether the Scottsburg and Austin Ordinances are

15

enforceable, but the only remaining claim for declaratory relief – Count I, seeking a declaration relating to Scottsburg's annexation of the Disputed Property and its offer to serve that property – is not an issue before the IURC. Consequently, the Court finds that *Wilton/Brillhart* abstention is not appropriate.

The Court **DENIES** Defendants' Motion to Dismiss to the extent that it declines to abstain from hearing this case under either the *Burford* abstention doctrine or the *Wilton/Brillhart* abstention doctrine.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, [9], as follows:

- **DENIES** Defendants' Motion to Dismiss Counts I and V;

- **DENIES** Defendants' Motion to Dismiss Count IV to the extent Count IV is based on Defendants' actions relating to annexing the Disputed Property and offering to provide service to the Disputed Property;

- **GRANTS** Defendants' Motion to Dismiss Count IV to the extent Count IV is based on Defendants' adoption of the Scottsburg and Austin Ordinances, and **DISMISSES** that portion of Count IV **WITHOUT PREJUDICE**;

- **GRANTS** Defendants' Motion to Dismiss Counts II and III and **DISMISSES** those claims **WITHOUT PREJUDICE**.

Counts I, IV (to the extent it is based on Defendants' actions relating to annexing the Disputed Property and offering to provide service to the Disputed Property), and V **SHALL PROCEED**. The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding resolving this matter short of trial. The Court specifically requests that the Magistrate Judge discuss with the parties whether the District intends to re-assert the claims that

the Court has found are not yet ripe in the event the IURC approves the Ordinances and, if so, whether a stay of this matter pending the IURC decision would be appropriate.

Date: 8/3/2022

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**